We're ready for argument in U.S. United States v. Nielsen. Mr. Marcinak. Good morning, Your Honor. May it please the Court. Leland Victor Nielsen was sentenced to life in prison at age 32. And the question for this Court and the issue for this Court is whether there were errors committed at his trial that warrant careful review by this Court and reversal and remand for a new trial. The first issue that we raise on appeal is whether Mr. Nielsen was improperly questioned in an interrogation by federal agents without being read his Miranda rights and whether it was error for the trial court to admit Mr. Nielsen's confession into evidence that was obtained under those circumstances. There's no question Mr. Nielsen was not given his Miranda warnings when he was questioned by federal agents. The only question on appeal is whether that questioning occurred during a custodial type interrogation. The question, the dispositive question, is whether a reasonable man would have believed he was at liberty to terminate the interrogation and leave under the circumstances under which Mr. Nielsen was questioned. This Court has sort of two paradigms set up for this situation. Two cases, two lines of cases. There's the United States v. Hashimi and the United States v. Colonna cases which we rely on here to argue that Mr. Nielsen and a reasonable man would have believed that he was being questioned in custody because he was not free to leave. There are two other cases, United States v. Beard and United States v. Parker, that the government relies on to argue that a reasonable man would not have believed that he was free to terminate the interrogation. In all candor to the Court, this case falls sort of between those two lines of cases. And so the question for this Court is which line of cases should control. We of course argue that this case should fall under United States v. Hashimi and United States v. Colonna. In those cases, the defendant was questioned for three hours at his home, isolated from his family. In United States v. Hashimi, he was even told that he was not under arrest and that he was free to leave and that he did not have to answer questions. And in Hashimi, this Court found that a reasonable man would have believed that it was a custodial interrogation. Isn't the strongest factor in your favor the length of time? That is one of the two strongest factors, Your Honor. That's correct. In United States v. Hashimi, this Court said the sheer length of the questioning can establish that this is a custodial type interrogation. So yes, Your Honor. Two most important factors. The sheer length of the time here, three hours. And unlike in Beard and Parker where there were brief exchanges, in one of those cases it was 30 minutes and the other one we're told it's a brief exchange. The other most important factor is that Mr. Nielsen was never told that he was free to leave the interrogation. He was never told that he did not have to answer the questions that were being leveled at him. And if you read the record, these were machine gun questions. Well, he was never Mirandized. He was never Mirandized. He was never told he was free to leave. And in Hargrove, this Court said that whether the defendant was told that he was under arrest or is free to leave is highly probative of whether the questioning is in a custodial interrogation setting or not. He was free to move around. He was standing outside his home. He apparently moved around quite a bit. To a certain extent. Now, the officers testified he was not free to enter his home. And in fact, they prohibited his wife from having access to him. That's a hallmark of custody when you can't have access to another person or to a family member. So in this case, the question is whether all these facts add up to make it more like Hashimi in Kelowna or more like Parker in Beard. We think what this Court has said about the sheer length, about not being told he was free to leave, about having his movements restricted, not having access to family, those are hallmarks of custody. And so for that reason, it was error to admit his confession that occurred under those circumstances. You cited Hashimi, but obviously Hashimi is different on its facts. You've got about 15 to 30 officers coming into the defendant's home there in the middle of the night, guns drawn. They wake him up. They drag him outside into the home. We don't have that here. We don't have that. We've got two or three FBI agents. It's not – what time of the day are we talking about? Evening. Okay, early evening. He's not dragged out of his home. They don't have their guns drawn, right? So it's not anywhere near as coercive as what we thought was sufficient in Hashimi to find custody. You would agree with that? I agree with that. And that's why I said this falls between the two lines of cases, and it's a question for this Court as to where you're going to draw the line. And obviously federal agents try to get as close to that line as possible. They would prefer not to give Miranda warnings and alert the defendant to his rights unless they have to. And so they try to push as close to that line as possible and to question in a non-custodial situation. And the question here is whether they pushed too far over that line and placed the defendant in a custodial situation. And so that's a – the Court's going to have to draw the line here and decide where that line should be drawn. But I think those fall apart. Other than the length of time, what was the other strongest factor you're relying on? The length of time and the fact that he was never told that he was free to leave or that he did not have to answer the officer's questions. And in Hargrove, the Court said that is highly dispositive of whether this is a custodial interrogation or not. The other one, I think the other strongest factor, is that his family was prevented from having access to him. That's a hallmark of custody when you can't access your family and really any other persons  So for those reasons, we think it was error to admit the confession and the Court should vacate the conviction. That error is preserved. It was argued at trial. The trial court denied the motion. That error is preserved. And so we think that alone justifies this Court vacating the conviction and remanding. The second error that was committed here was that Mr. Nielsen was convicted for violating 18 U.S.C. section 2241A and C and 18 U.S.C. section 2243A. Those sections, that resulted in multiplicitous convictions for Mr. Nielsen. And so if the Court is inclined to not find error on the first point, the second point would also justify vacating Mr. Nielsen's conviction and sentence and remanding for a new trial. Here, Your Honor, the combination of United States v. Johnson, which allows for an inference of force... Did you say remand for a new trial? Why would we remand for a new trial? Why wouldn't we simply vacate those convictions that we find multiplicious and remand for a new sentencing hearing? Well, Your Honor, this case is a very unique case because the combination of... But in this case, the combination of United States v. Johnson and its allowing an inference of force to allow a conviction under 2241A really makes these the same offense. And so the jury was allowed to jump up and find and convict him on 2241A merely by finding that the elements of 2243A were satisfied. So by finding that Mr. Nielsen committed sexual abuse of a minor, the jury was allowed to jump up and convict on 2241A, which resulted in a life sentence. And so under those circumstances and with the jury instructions here, the conviction under 2241A is premised entirely on the elements of 2243A being satisfied. Are you arguing that there's a factual gap or void in the evidence? I mean, if the evidence is sufficient to convict on one or the other, then why would we remand for an entirely new trial? Because we think that the jury, under these circumstances, the jury was able to convict Mr. Nielsen of the higher offense, the aggravated assault offense, without the elements of that offense being proven because of the inference that got the jury from 2243A to 2241A. And so here the error was the conviction on the higher offense based on evidence, based on an inference that could be drawn merely from the lesser offense. So there needs to be a new trial without both of those offenses being charged to the jury. The instructions that were given allowed the jury to combine those two offenses into one offense and to convict him of the offense that made him subject to life sentence based on merely the elements of the lesser offense being satisfied. Mr. Nielsen is entitled to have a jury that finds that he used force to convict him of the higher offense of 2241A. Was this argument ever made below? Yes. The defendant raised the issue of force and the inference of force. In the context of multiplicity? Your Honor, the word multiplicity was never used. What was used? What was said to alert the district court to what is now your argument? The defendant objected to the inference of force being allowed to, for the jury to be allowed to convict of 2241A based on an inference of force on the size disparity between the defendant and the victim. And what is the basis in the record for your argument with respect to, specifically with respect to multiplicity? How was the district court put on notice that you had that argument? Well, the defense counsel raised to the district judge that if force was going to be allowed to be inferred based on the size disparity, then the jury could only convict of one or the other but could not convict of both. And so that was raised to the district judge. But even if it wasn't, we think that that was plain error. That there's plain error here on the multiplicity. And the reason is that that error, it's a Fifth Amendment error. It affects substantial rights. And this court has not hesitated to find claims of multiplicity to be plain error. In fact, in United States v. Gary, it appears that this court, so to speak,  And can you give me, I'm sorry, but can you give me your best argument on how the substantial rights were affected in the context of concurrent sentences? The context of concurrent sentences, well, we think that the substantial rights were affected before we got to the sentencing hearing. We think substantial rights were affected because he was convicted on the higher offense and that he should not have been convicted on the higher offense. What happened was the conviction on Section 2243 allowed the jury to jump up and convict him on 2241 by relieving the government of the obligation to prove that force existed because it was allowed to rely on an inference based on the size disparity, which will be present in every case where there's an adult and a minor. Now, I recognize that United States v. Johnson is a decision of this court that allows that inference. But Johnson was decided before the Supreme Court decided Alleyne. And Alleyne changed the elements of 2241 as charged in this case where there's a minor involved. And the government has now recognized that the element of being a minor child is a part of 2241 for purposes of this case. So the elements of 2241 and 2243 are now identical in the context of this case. And so Johnson needs to be reconsidered in light of Alleyne. And I recognize this panel has no authority to overrule a prior panel decision. But intervening Supreme Court precedent now calls for reexamination of Johnson, if not by this panel, by the en banc court, because the change in elements means that the elements of 2241A and C as charged in this case are now identical to the elements of 2243A. Same identical elements convict on both offenses. And so in this case where the government has charged both statutes, the jury is able to convict by finding the same conduct satisfies both statutes, subjecting Mr. Nielsen to a life sentence under 2241A, based on merely meeting the elements of 2243A. And that's the effect that Alleyne has. And so the inference that was allowed in Johnson now becomes impermissible because it results in multiplicity. Mr. Marcinick, I think you said that part of the problem here with the force presumption is that the jury will always be able to find force in every case. I think that's too broad a statement. There may be circumstances, factual circumstances, where you're dealing with, for example, a female adult offender and a male minor who may, in fact, be bigger than the adult offender. So how does that work with respect to the argument? If you've got exceptions, that might apply. Yeah, I would readily concede there could be factual circumstances where the force may not be inferred, where you have an adult and a minor involved. But certainly the vast majority of the time that would be the case. And in this case, that's the case. The government, the inference based on size disparity was charged to the jury by the judge. The government relied on it. And the jury asked a question about how it should apply the inference. So we know in this case the jury relied on the inference or most likely relied on the inference in convicting on the higher offense. So, yes, it would not be the case in every case with a minor and an adult, but in this case it was. And so the jury was allowed to convict on both offenses based on the exact same conduct. So that's the harm that the force inference works in this context. Thank you. Mr. May? May it please the Court? My name is Jim May and I'm here on behalf of the United States from the Office of the United States Attorney in the District of South Carolina. Starting with the issue of multiplicity, this case involves a man who was convicted of raping his 12-year-old niece. He was convicted on eight different counts for four different incidents. It would appear that the best way to analyze this issue would first start at waiver, as at no point until arguably the supplemental briefing did the appellant ever raise this issue. Mr. May, of course, that's a perfectly legitimate argument for you to make, but I think we fully understand it and you've made it in writing, so it would be helpful, if you think it would be helpful, to assume we don't find waiver or forfeiture and that we proceed to consider it. If you do not find waiver or forfeiture, then it would be a plain error standard. And under the current case or the current standard… And the government agrees that there was multiplicity here? I don't think so. I think that it offends the Blockberger Elements Test. However, I think there's a different analysis when we look at the instruction from Garrett and Whelan when we have to look at the legislative intent. I'm not sure that the legislative intent was not to have two separate crimes which punished two separate actions and to allow both punishments to stand. And I think you can get there when you start looking at the legislative intent. In 1986, the legislature, they reformed the sexual abuse statute. And we have the 1986 Sexual Abuse Reform Act is where we get 2241, not in its current state, but we also get 2243. 2243 was expressly meant to take into consideration people who use their age, the sophistication, to prey upon children. 2241 is the forceful rape statute. Then in 1996, we have that Amber Hagerman Child Protection Act which comes about and says that, hey, we need to ensure that people who forcefully rape children between 12 and 16, that they are punished at the upper ends of the guidelines. Then in 1998, we have, at least when you look at the House Committee's notes, they actually went forward and they said, hey, we're going to make a recommendation that 2243 becomes a lesser included of 2241. Well, the legislature did not take them up on that. So what we have is we have at least a question, did the legislature intend to have two separate and not have lesser included? I'm sorry, if it's questionable, then it doesn't rise to the level of the clear legislative intent that the analysis requires, does it? I would agree with you, Your Honor. At least for me, it is at least a question. My reading of it, it appears that that's exactly what their intentions were. But in all candor, I don't know if it raises to the clear legislative intent. But what we do have is we have a host of other circuits who have addressed this issue, albeit pre-Alleyne. And those courts have found that 2243A was not a lesser included of 2241C. So although be it pre-Alleyne, there is case law from a multitude of circuits. And in fact, I don't know any case law. Does that case law mean anything after Alleyne? I'm not sure that Alleyne changes legislative intent. And because that's what the courts are really saying. We're talking about statutory interpretation, not legislative intent. I grant you legislative intent is what it is. And in all candor, Your Honor, the statutory interpretation isn't an attempt to divine legislative intent. That's what Blockberger and Garrett and Whalen and their progeny tell us, that that's what the Blockberger elements test are intended to be. Okay, I'm sorry. Forgive me. Can we just cut to the chase? Yes, yes, sir. Assume we find error. Yes, sir. What is it that we believe should be cured? Yes, sir. What is the remedy here? The remedy under Stewart, Luskin, and Ball, if you find that error was plain, that the court should have said, hey, I understand that you're arguing in the alternative, and that you never raised it, but that I'm going to find it, the remedy would be to remand for re-sentencing where the government has the election to dismiss the 2243 charges and saving the defendant $400 worth of special assessments. Why couldn't we just vacate? I don't know of any case or any precedent which would allow that. The Fourth Circuit law is clear. I mean, the sentence doesn't change, right? Except for the $400 special assessment. That's absolutely right. So why can't we just vacate? Why can't you vacate the counts 2, 4, 6, and 8? Yes. Why wouldn't that give the defendant everything he's entitled to? Without any? Without. I'm sorry. No. It takes nothing from you. Yes, sir. And I had not considered that at all. I'm glad I'm contributing something. I had not considered that just simply because the line of cases that I've been able to, I mean, we've been thinking about this a lot, and the line of cases that we see is that the appropriate remedy is the election if it was raised. And arguably, I mean, under this court in McDonald, that it must be raised at least in the opening brief. And when one reads the appellant's opening brief, this issue was not raised. He raised the word multiplicity, but then it's in run at the jury instructions. But this issue was not raised with specificity to allow the government to respond. In fact, he didn't even mention Alleyne. So arguably under McDonald, not only was it waived by not raising it before the case was called, it was raised in the appeal. Well, the interesting thing is, though, that even though he didn't raise it, you, the government, responded to the argument, I guess, somehow suggesting that we might predict or forecast that argument here today. We've been analyzing this issue, and how does Alleyne change our analysis of what pre-June 2013 were, by all courts, not lesser includes. And I imagine you just did that out of an abundance of caution, because you don't get a reply. That's right. So we're trying to address the issue, and we're trying to forecast what we believe may be what y'all have questions about. And it appears that that's exactly what y'all are asking about. Good call. I don't know if that's a good thing or a bad thing, but here we are. So, and Judge Davis, I know that you directed me to the ultimate issue. Yeah, and that was not an indication that I thought you shouldn't go back to that. Yes, sir. But it does appear that waiver applies. Looking at Rule 12b and its corollary of 12e, that it does appear that waiver applies. When one looks at this court's ruling in Price, Price says that failure to raise claims on multiplicity or its sister duplicity, if you don't raise it beforehand, they're waived. The defendant tries. Yes, ma'am. It's just so circular. If it's what you get to, you get to the same analysis. It can't affect substantial rights if it won't change the sentence anyway. I agree with you 100%. However, I'm not sure that's what the law is. Because I think that the way it affects a substantial right is the $400. Well, it also eliminates two convictions. That's true. Four convictions. That's four, right. It eliminates four convictions and $400 for the special assessment. While, in all candor, I agree with you, Judge Duncan, I think that is- That's a practical matter. It is minimus, but in a practical manner, the man still is facing a life sentence for raping a six-year-old. Right, yeah. That being said, the waiver rule, Judge Agee in Luskin, I believe, Lurkin, said that it's an open question. I'm not sure that's right, especially with price. And there are other times when this court has considered failure to raise various issues pretrial, such as venue, or failure to raise a motion to suppress pretrial, then that weighs the claim later. Do you think it was a tactical decision not to argue multiplicity at the outset? It would appear as such, especially when they, in their closing argument, did argue in the alternative. I also think that that would actually go also to the plain error analysis, right. You have a defendant who is arguing, hey, we didn't do it, but if we did do it, then convict us of the 2243, not 2241. And oftentimes, I was a former public defender, I can tell you that we would oftentimes argue, please split the bait. Please take the middle ground. Please give the lesser included. In this case, I'm not sure that they would have been entitled to the lesser included under the right if they had moved to dismiss the multiplicity claims. So therefore, the defense was allowed to, at least in a part of their closing, juxtapose the two statutes, to juxtapose count one and count two. And he does and says, listen to what you didn't hear. You didn't hear force. Well, that's not what the jury found. And I'll do candor to appellant's attorney. That's also not what the court found. In Joint Appendix 769 through 771, the court made finding that there was sufficient force shown to the jury to sustain convictions of 2241C under the prevailing case law. And it would appear that there was a tactical decision there, one that we often see in trials where defendants attempt to get the lesser included or the split baby defense. The appellant cites Gary. I think Gary in this case are poles apart. Gary is a case where this court, as well as the Supreme Court, had affirmatively said that the bank robbery statute, which the defendant was convicted under, was the lesser included of the other. At the time that this case went in, to this day, I have not found a court that says 2241C is the greater offense of 2243A. In fact, there are courts that say the exact opposite. As Judge Davis, you're right that those were pre-Alleyne. However, there is no clear case in this circuit or any circuit that stands for the proposition that there was controlling law or even persuasive law that would allow the judge to be on notice that, hey, even though they didn't raise it, and even though they're arguing in their closing, arguing the alternative, asking that the jury come back a verdict of 2243A, I still need to stand up and say, hey, on my own, hey, wait a second, I'm not sure we're there. Because that's really what the plain error standard is about, is that he sua sponte recognizes that, hey, there's controlling case law, and I cannot let this charge be submitted to the jury or cannot allow for this man to be sentenced on these two claims which punish the same actions. We do believe that Johnson is a correctly decided decision. Johnson allows for the permissive inference. The Supreme Court in County Court v. Allen says that permissive inferences are appropriate. What Sandstorm says is that conclusive inferences are not. The jury instruction said you may infer. There was the may. Furthermore, as I've already pointed out, that there was the finding by the court that sufficient force to sustain the convictions of 2241A was present in the fact that he grabbed the 12-year-old by the back of her head before he forced her to perform oral sex on him, that he manually physically spread her legs, that he laid on top of her, that there was sufficient force for the jury to find exactly what they found, that this man raped a 12-year-old, and for those convictions to stand. I'll be happy to answer any other questions on this issue, or I can begin speaking about what occurred in his confession. I think we're fine. Okay. Thank you. Your Honors, the defendant or the appellant has attempted to draw a comparison between, and I think you all have pronounced it right, I'm not Hashimi, and Klona in this case. I think Judge Diaz, you're right. In this case, we had one man. No law enforcement regalia. No guns seen. He had more than one officer. There were five officers in the house. One man was waiting on the front porch. They knew that the defendant was coming back to the house. Well, they knew because they had his wife. His mother-in-law. Mother-in-law calling back to the house. That's absolutely correct. He comes back. Special Agent Weisenhofer, as the record reflected, was 145 pounds. The defendant was a big man. And Special Agent Weisenhofer approaches him and says, hey, I'm here to talk about your niece. You're not in any trouble. That wasn't quite accurate. Well, at the time, there was an instruction per the United States Attorney's Office when they called us and asked us, did he have authority to arrest him? And the answer was no, you do not have the authority to arrest him on the child's statement alone to an Army CID agent. So at the time, he was not under arrest. The court found that he was actually free to leave throughout the entire confession, conversation, however one would like to characterize it. But that one man approached him. It was not the 15 to 30 as in Hashimi. It was not the, I believe it was 20 officers or 25 agents at 629 in Kelowna. Hashimi was taken, and I believe he was taken to the basement. And Kelowna was actually taken and seated in between two agents in the backseat of an SUV. This was a conversation where the defendant admitted that they never put handcuffs on him. They never pulled a gun. They never directed him where he could go and where he could sit. And in fact, what I believe Beard stands for is that it is the perspective of the person who is in the conversation with law enforcement that is the trigger. Because in Beard, they were going to arrest him regardless. But this court found in Beard that his perception was that he was there talking to the agents. Similarly here, the most he ever saw was three different agents. He was never, per the testimony, he was never prevented from going inside. The agents brought him water. They never took his car keys. They never blocked in his car. Well, I thought he couldn't go inside because they were conducting a search. Am I wrong about that? I'm not sure he ever attempted to go inside. I believe that's what the testimony of Special Agent Weisenhofer and Special Agent Stansberry was. I believe that's their testimony. But this was a conversation that lasted, as you all correctly noted, a long time. I direct you all to look at Joint Appendix 49. In Joint Appendix 49, there was a question asked to Special Agent Weisenhofer, why did this take so long? Special Agent Weisenhofer said, well, throughout the entire time he's sitting there and he's saying he wants to kill himself because from this point forward he'll be looked at as a sexual predator. And that oftentimes they'd have to talk him back. Special Agent Stansberry, in his testimony, said that he would often wander and he'd start minimizing his various culpability that they were there to talk about and that it was really an attempt to try to focus him on the issues. At which time he did say, you can count him on one hand. And he went through and he gave very specific details of the sexual abuse of the sixth grader that he committed. This was a child that he had seen who was at the hospital for when the child was born. And the details which were later confirmed in the forensic interview of the child. There were very specific details which left no doubt for the jury that he did these heinous crimes. I'll be happy to answer any other questions you all may have on this issue or any others. Thank you. Thank you. Mr. Marcinek. Thank you, Your Honor. And just a couple of brief points in rebuttal. The government argues that the two offenses on which Mr. Nielsen was convicted are not multiplicitous. And the government says these are two separate crimes, two separate actions. The problem is, post-Aleen, these are not two separate crimes, two separate actions. These are now the identical elements because 2241C is now considered an element that has to be proven to the jury. So we have the exact same elements under both offenses. And what the government is arguing, because Aleen collapses these two statutes into really one set of elements, the government is arguing that it's constitutionally permissible to convict a defendant under both statutes on the same evidence. And the government only gets there by arguing that legislative intent shows that Congress intended for that to happen, for a defendant to be able to be convicted under both statutes on the same set of facts. And I would argue that legislative intent is far from clear on that point. And unless you can find that it clearly shows that Congress intended for that to happen, then this is a constitutional violation. This is a violation of Mr. Nielsen's Fifth Amendment rights. Aleen has changed the way we look at elements and the need for proof of elements. And the problem with United States v. Johnson is that by allowing the inference of force, Johnson now allows for conviction under both statutes for the same set of conduct. And so the force instruction that this court approved in Johnson post-Aleen is no longer appropriate, where you've got both statutes charged to the jury. And so for that reason, we would ask the court to vacate the convictions and remand for retrial. Tell us again very briefly why you think a retrial is necessary. Because the jury, Judge Davis, the jury was charged that it could convict Mr. Nielsen of a 2241 violation based on an inference of force that it could draw between the size disparity between Mr. Nielsen and the victim. And that relieved the government of having to prove actual force. Once it proved that a minor child was involved, then the government had met the elements of 2241. And the problem with that is that it relieves that element because 2241C, the element of a minor child, is now brought into 2241A by virtue of Aleen. It relieved the government of having to prove anything more than that a minor child was involved. And you regard that as an instructional problem and not a sufficiency problem? Well, it's an instructional problem because it allowed the jury to convict based simply on the fact that a minor child was involved. But didn't the judge specifically find there was sufficient evidence to prove force? The judge found that there was evidence of actual force that was presented to the jury. So he denied the Rule 29 motion? That's correct, yes. And so I'm still having problems understanding why. But the problem is I think other items in the record show that regardless of whether there was actual force that was presented to the jury, the jury was charged that the government did not need to find that actual force, that they could rely on an inference. That was argued to the jury by the government, and the jury asked a question specifically about the inference based on the size disparity. They asked, do we have to find that there's a physical disparity and physical force, or can it be emotional overbearing? And so the jury was clearly focused on the idea of the inference. Okay, I see what you're saying. And so I don't think you can say that, yes, the jury necessarily relied on actual force. Although that's what the judge found sufficient evidence for the jury to have done that. The judge would essentially have said that it was harmless even if it was error because there was evidence of actual force. I don't think you can say it's harmless beyond reasonable doubt because the jury clearly was focused on the inference. And so for those reasons, we would ask that the court vacate the conviction. If we disagree with you, I take it you agree that simply vacating is the remedy you're entitled to. There's no need for a resentencing here. If you disagree with me, then I think vacating the multiplicious offense is the remedy, and both the conviction and the sentence coming out of those offenses. Okay, thank you. Thank you. Thank you very much, Mr. Marcinak. We will come down. I'll ask the court to adjourn court for the day. We'll come down and greet counsel and then take questions, not from the lawyers, but participants. Thank you. Oh, thank you. And thank you. It has been pointed out to me that Mr. Marcinak is court appointed, which is not reflected on my sheet, but please accept our profound thanks for the service you've rendered to this court as well as your client. Thank you.
judges: Allyson K. Duncan, Albert Diaz, Andre M. Davis